## A. B. BEALL, Appellant, v. HARRY INGERSOLL, Respondent.

St. Louis Court of Appeals. Argued and Submitted February 6, 1920. Opinion Filed March 2, 1920.

1. **REFERENCES: Referees: Appointment of Referee: Objections Not Noticed on Appeal Where no Bill of Exceptions Was Filed During Term at Which Order of Reference Was Made.** Where a reference

was ordered at the March term of court and no bill of exceptions was filed at the March term, general exceptions filed at the succeeding December term objecting to the appointment of the referee cannot be notice on appeal.

2. **COURTS: Evidence: Appellate Court Takes Judicial Notice of Terms of Louisiana Court of Common Pleas.** The Court of Appeals takes judicial notice of the terms of the Louisiana Court of Common Pleas and the days on which such terms fall, under Session Acts of 1915, p. 262.

3. **APPELLATE PRACTICE: Replevin Bond: Judgment Against Surety Assumed Right Where Replevin Bond is Not in Record.** On appeal in an action of replevin from a judgment against plaintiff and his surety on a replevin bond for the value of defendant's interest in property, and the surety did not appeal, the appellate court will assume, in the absence of the replevin bond, that the judgment of the circuit court against the surety was right.

4. **REPLEVIN: Liens: Lien for Amount of Claim: Right of Possession.** In an action of replevin for the recovery of a motor boat and barges, *held,* in the absence of the evidence, that the summary made by the referee justifies him in his conclusion as to the making of the contract, the lien, and as to the amount of defendant's claim, finding the value of the interest or amount of the lien that the defendant had in the replevied property.

5. ———: ———: ———: ———, **Amount of Recovery: Value of Lien Interest.** In an action of replevin, where defendan tclaimed the right to possession of property under a contract giving him a lien, etc., and claimed title only to the extent of his lien, the finding of the value of the interest or amount of the lien that defendant had in the replevied property and failure to assess the full value of the property thereof was not only no defect but a procedure entirely correct, since it would have been error to have adjudged the whole value of the property to defendant or to have awarded him anything more than the amount of his interest in it.

Appeal from Louisiana Court of Common Pleas.—*Hon. Edgar B. Woolfolk,* Judge.

AFFIRMED.

*Pearson & Pearson* for appellant.

(1) The pleadings, taken in connection with the record in this case, show that this is a case that could

have been tried by a jury without unnecessary delay or complication; and, therefore, should not have been referred, over the objection of plaintiff, thereby depriving him of his right to a verdict of a jury, as to whether he made any such contract as is plead by the defendant. The contract having been established, there is no way by which plaintiff could have combatted defendant's alleged items of expense. Defendant could, as he practically did, swear that all the items of expense were made in connection with the motor boat and barges under his contract with plaintiff; that they are reasonable, and the customary charge for such work and for such items. Sec. 1996, R. S. 1909; Creve Couer Co. v. Tamm, 138 Mo. 385; Thornton v. Life Assn., 7 Mo. App. 544. (2) The judgment entered in this case is erroneous, because the referee failed to assess the value of the property replevined. This was imperative, before the court could render a judgment in the alternative, against plaintiff, and especially against his bondsmen, to-wit: that plaintiff return the property taken, or pay the value so assessed, at the election of the defendant. Secs. 2647-2648, R. S. 1909; State ex rel. v. Dunn, 60 Mo. 64, 70; Clinton v. Stovall, 45 Mo. App. 642, 644; Freeman v. Lavenue, 99 Mo. App. 173, 177-8; Dixon v. Atkinson, 86 Mo. App. 24, 29; Absher v. Franklin, 121 Mo. App. 29, 35; Schnaider Brewing Co. v. Neiderweiser, 28 Mo. App. 233, 237. (3) The judgment in this case is erroneous, and should be reversed because the defendant made an election to take the amount of the debt found by referee to be due him from the plaintiff; and the court sustained his election by giving him a judgment for the amount of his indebtedness against both plaintiff, and his bondsmen, without having before it any finding, or evidence as to the value of the property replevined. (See authorities cited under division 2.) (4) The judgment as rendered against plaintiff's bondsmen is void, because it is for the amount of a debt found by the referee to be due defendant, and not for the value of the property replevined. The bondsmen are only liable for the return of the property or its

value, as assessed by the referee, or jury. The bondsmen entered into no obligation to pay plaintiff's indebtedness. Sec. 2639, R. S. 1909; Schnaider Brew. Co. v. Neiderweiser, supra, 237. (5) The value of the property replevined must be assessed as of the date of trial by the referee; based upon substantial evidence of the value of the property; and unless the value is so assessed, it cannot be fixed by the court in its judgment. Schnaider v. Neiderweiser, supra, 237; Ascher v. Schaefer, 25 Mo. App. 1, 3; Clinton v. Stovall, 45 Mo. App. 642, 644; Mix v. Kepner, 81 Mo. 93; Chapman v. Kerr, 80 Mo. 158; Kirkendall-Jones & Co. v. Hartsock, 58 Mo. App. 234, 240; W. W. Kendall Boot & Shoe Co. v. Bain, 46 Mo. App. 581, 595.

*Frank J. Duvall* and *Hostetter & Haley* for respondent.

REYNOLDS, P. J.—By his petition in this cause the plaintiff claimed that he was entitled to the possession of certain goods and chattels of the value of $1000, describing them as consisting of a motor boat named "Thelma Lee," two barges, and tools, lines and equipment pertaining to the motor boat and barges, and charges that the defendant wrongfully took the property from his possession and still unjustly detains it. The prayer is for judgment against the defendant for the recovery of the possession of the goods and chattels and $250 damages for their taking and detention, and in case a delivery of the property cannot be had, plaintiff prays judgment for the sum of $1000 and $250 damages. This petition was duly verified.

The answer, denying the allegations in the petition, except as admitted, admits that defendant had possession of the property described in the petition up to the time it was taken out of his possession, and that he had possession of the property during all the times mentioned, as bailee under a contract and agreement between him and the plaintiff, as the owner of the property; that the items constituting this indebtedness amount to $735.13, which was a lien on the property in

favor of defendant, the contract further providing that defendant had the right to hold possession of the property as security for the indebtedness and until plaintiff should pay it off. It is further set out that the various items of indebtedness due and owing from plaintiff to defendant gave defendant the right to hold possession of the property as security for the indebtedness and until plaintiff should pay it off. It is further set out that the various items of indebtedness due and owing from plaintiff to defendant, a detailed statement of which is afterwards set out in the answer, represented money expended by defendant, materials furnished by him, and labor and services performed by him in managing, looking after, caring for, and keeping in repair and proper condition the boat and barges and other property mentioned in the petition, it being averred that all these items of indebtedness were incurred at the special instance and request of plaintiff and were all by agreement between plaintiff and defendant a lien in defendant's favor on the property described in plaintiff's petition. Averring that these amounted to $1000.63 and that plaintiff is entitled to a credit thereon of $266.50, it is averred that the balance due defendant is $735.13, which defendant avers is a lien which he is entitled to have declared and adjudicated as such, wherefore he demands a return of the property.

An itemized account is then set out in the answer and commences with an item of October 14, 1913, and runs down to July 3, 1914, the debit side including some 80 items, amounting to $1001.63, and the credit side of five items amounting to $266.50.

Averring that no part of the balance of $735.13 has been paid to him by plaintiff, and again averring that it constitutes a lien on the boat and barges and other property described in the petition, defendant asks judgment against plaintiff for that sum and that the court adjudge it a lien in his favor on the property, and that the property be returned to defendant to be held by him until plaintiff shall pay off and discharge the amount of the lien, and that defendant be permitted

to have and retain the property until his lien is satisfied, and for further relief.

The reply is a general denial of that "portion of the answer commencing at the third paragraph on the first page thereof and continuing to the end of the answer on page four thereof." As the paragraphs are not numbered in the abstract, it is difficult to say what parts of the answer are admitted and what parts denied—possibly all that part of the answer which sets up a lien and the amount thereof. We will assume that to be the case at any rate.

It appears that there was a trial of the cause and that, the jury disagreeing, on March 1, 1916, and in vacation, defendant filed a motion for reference, and that on March 13th, presumably at the March, 1916, term of the court, the motion for reference was argued and submitted and sustained by the court and, by agreement of counsel, a referee named. While it is stated in the bill of exceptions filed at another term that exception was saved by plaintiff to the order of reference, no bill of exceptions was filed at that March term. The referce proceeded, pursuant to notice, on June 2, 1916, to hear the case and, on August 4, 1916, and in vacation of the court filed his report, filing his transcript of the evidence on August 22, 1916. The report of the referee is before us, so far as concerns his finding, but the evidence produced before him is not in the abstract. The referee concludes that the burden is on defendant to prove by the greater weight of evidence the contract set out in his answer. Summarizing the evidence, he concludes that it shows that plaintiff knew defendant was engaged in the saw mill business at Clarksville, and that he was not in a position to engage in general contracting work on the river; that it was necessary for plaintiff to place his saw mill property in the hands of some competent party to manage and look after so as to keep it in repair and good condition; that owing to the rise and fall of the river, rains, snow and ice, the property required almost daily attention; that the season for river work

was about over and when plaintiff reached Louisiana it was past the middle of December. Trouble with plaintiff's partner, labor trouble at St. Louis, and the necessity of some one to look after the property during the winter were the conditions confronted by plaintiff and he telegraphed defendant to meet him at Kansas City in November, when the contract of pledge, as averred by defendant was made. The referee further finds from the evidence that plaintiff and defendant had been on friendly terms, but that prior to the institution of this action plaintiff employed three parties to go with him to Clarksville to get the motor boat and two barges. Afterwards, knowing defendant was at Louisiana, the plaintiff and some hands went to Clarksville and attempted to take the property during the absence of defendant but was prevented by defendant's attorney. Reciting the efforts of plaintiff to obtain possession of the property surreptitiously from defendant, the referee reports that taking into consideration the testimony of both parties, he did not find plaintiff and defendant to be of equal credibility; that the testimony of defendant is corroborated by facts and circumstances; that the contract alleged by plaintiff would have been an unreasonable one for defendant to have made and the evidence shows that plaintiff knew defendant was engaged in the saw mill business and unable to engage in general contracting; that the contract alleged by defendant was not an unreasonable contract for plaintiff to have made under the circumstances existing at the time. The referee further found that plaintiff had advanced money to defendant to defray expenses for which defendant had given him credit. "This," says the referee, "is not inconsistent with the contract. By the terms of the contract the plaintiff was liable for all expenses;" that there were future charges, which could not be estimated, to be incurred for money expended for repairs and labor, etc., in keeping the property in good condition during the coming winter and thereafter; that the plaintiff wanted the property to be

held in the future in the name of the defendant on account of his difficulty with his partner, and assured the defendant that the property was his until he had paid him for all money expended and labor performed thereon. In conclusion the referee finds from the evidence that the plaintiff is indebted to defendant for the money expended, materials furnished and labor and services performed by defendant in managing, looking after, caring for and keeping in repair and proper condition the motor boat, "Thelma Lee," and the two barges, all of which the referee finds to be reasonable and necessary charges, and incurred at the special instance and request of plaintiff. Here follows an itemized account as set out by defendant, the debit amounting to $1001.63, the credits amounting to $266.50, leaving plaintiff indebted and owing defendant the sum of $735.13. The referee further finds that plaintiff had entered into a contract with the defendant, whereby he pledged to defendant the motor boat and two barges to secure to defendant the payment of said items of charges against plaintiff as above set forth, and that by reason thereof, under the terms of the contract, the defendant has a lien on the boat and the two barges for the sum of $735.13, which he finds to be owing by plaintiff to the defendant, and that by virtue of the contract the defendant has a right to hold to property until the indebtedness is paid by plaintiff to defendant. He accordingly recommends judgment for that amount, and that the defendant have and recover of plaintiff and the United States Fidelity & Guaranty Company, surety on the replevin bond filed by plaintiff that sum, "the assessed value of the defendant's lien on said property, together with his costs and charges in this behalf expended and that he may have execution against the plaintiff and his said surety."

This report was excepted to for various grounds, among others, that it is against the law and the evidence, and that the referee erred in rejecting testimony offered by plaintiff and in admitting testimony of defendant over the objection of plaintiff; and that under the pleadings the burden was on defendant to show the execution of

the contract. Various objections are made to the report, which are not necessary to notice, the final one being that the amount found as a lien is grossly excessive.

At the December, 1916, term of the Louisiana Court of Common Pleas the exceptions to the report of the referee were overruled, plaintiff excepting, and on December 5, 1916, the report of the referee was approved and confirmed by the court, the court entering judgment in favor of defendant and against plaintiff for $735.13, and adjudging the general title in the articles described and taken by plaintiff under the writ of replevin to be in plaintiff, and to have been in plaintiff at the commencement of the suit, but that the defendant, at the commencement of the suit had and was entitled to a lien on the property for the sum of $735.13, "and the right to the possession of said property is in the defendant until said sum of $735.13 is paid by the plaintiff," the court further ordered the return to the defendant of the property or that the defendant have and recover of plaintiff and its surety the above sum, together with costs. Exception was saved to this and at the December term plaintiff filed his motion for new trial and also a motion in arrest of judgment. These motions were overruled, May 31, 1917, exceptions saved and on that day defendant filed his election to take the assessed value of his interest in the motor boat and the barges, the property involved in the suit, instead of the return of the property. This was sustained by the court, the court entering an order noting the fact of the filing of the election by defendant to take the assessed value of his interest in the motor boat and barges and accordingly the court entered judgment that defendant have and recover of plaintiff and his surety on the bond in replevin the sum of $735.13, "the value of defendant's interest as assessed heretofore in the property involved in this suit, together with interest," etc. This was excepted to, from which the plaintiff duly appealed to this court.

We cannot notice the objection to the appointment of the referee. The grounds of plaintiff's objection are

not in the abstract but, at any rate, the reference was ordered at the March, 1916, term of the court. Following that term came the September term, and following that the December term, and no bill of exceptions was filed in the case until the December, 1919, term. We take judicial notice of the terms of the Louisiana Court of Common Pleas and they fall on the second Monday of March and the first Mondays of September and December. [See Session Acts 1915, p. 262.] As no bill of exceptions was filed at the March term, general exceptions filed at the succeeding December term cannot be noticed.

One of the points of objection by learned counsel for appellant is that there should be no judgment against the surety. It is to be said of that, that the surety has not appealed, nor is the replevin bond before us. We might assume that the bond was in the statutory form, but we have nothing on which to base that assumption. We cannot indulge in it or as to what its terms were in the face of the finding of the referee and the judgment of the circuit court as to which latter we must assume right action.

We have nothing before us of the evidence, but the summary made by the referee, and that justifies him in his conclusion as to the making of the contract, the lien, and as to the amount of defendant's claim against the motor boat and barges.

Nor have we anything before us that enables us to pass on the admission or exclusion of testimony.

The main objection made by learned counsel for appellant, however, is that neither the referee nor the court found the value of the property but simply found the value of the interest or amount of the lien that the defendant had in the replevin property. Neither party, that is neither plaintiff nor defendant, were outside parties; plaintiff was not a stranger to the title but claimed title to the whole property, whereas the defendant only claimed title to it to the extent of his lien. In an early case, that of Dilworth v. McKelvy, 30 Mo. 149, this matter was most elaborately considered and deter-

mined. There it was held that in an action for the possession of personal property, where plaintiff obtains possession of the property upon giving bond and fails to prosecute his action with effect, quoting the syllabus, "and it appears that the defendant has only a special interest in the property as against the plaintiff—for example, a lien thereon for money due from the plaintiff to himself, or a mere claim to possession for a limited period; in such case judgment should not be rendered in favor of the defendant for the return of the property or the payment of the entire value of the property, but the value of the interest of the defendant in the property should be assessed, and judgment should be rendered in favor of the defendant for the value so assessed, or the return of the property until such value be paid, at the option of the defendant."

That case has been followed many times. It was distinctly affirmed and interpreted by our Supreme Court in Lewis v. Mason, 94 Mo. 551, 5 S. W. 911, 8 S. W. 735, the opinion of the majority of the court rendered by Judge BLACK, commencing at page 557, and referring to Dilworth v. McKelvy, supra, at page 558, that the action was by the general owner of the property against a person claiming a lien, and it is said: "The verdict was for defendant, and then followed an assessment of the full value of the property in favor of the defendant. This court then said the judgment should have been for the value of the defendant's interest, or for a return of the property until that value was paid. It makes no difference whether the party having a special lien on the property is plaintiff or defendant in the replevin suit. In either case his rights can be adjusted. As said in the case of Dilworth v. McKelvy, supra, 'The judgment in each case must be modified by the circumstances, so that the merits of the controversy may be settled in one action. The statute is a general one, designed to meet all the exigencies which the old action of replevin did, and the equity of its provisions will embrace these modifications of the forms in which judgments should be entered.' It is

too late to question the authorities before cited.   The forms prescribed in the statutes for judgments in replevin suits apply where one party recovers, and as a result the other is adjudged to have no interest whatever in the property.   Where, however, both parties have an interest in the property, the judgment must be made to conform to the rights of the parties, and these rights may be adjusted in the replevin suit.''   The authorities outside of Dilworth v. McKelvy, supra, referred to by Judge BLACK are Frei v. Vogel, 40 Mo. 149; Gilham v. Kerone, 45 Mo. 487.;  Boutelle v. Warne, 62 Mo. 353;  Dougherty v. Cooper, 77 Mo. 535.   Our court has followed the above rule in many cases, the last one being that of Weber Implement Co. v. Dunard, 181 Mo. App. 658, 164 S. W. 685, where, commencing at page 669, we said:

''Therefore, it appearing that the defendant possessed but a special and limited right or interest to the extent of his mortgage indebtedness against the property, it was erroneous to award him the full value of the property, for the damages should be limited to such special interest which resided in him, and, of course, this included the principal of the debt and accrued interest thereon—that is, the amount of the note remaining unpaid when the defendant purchased it, together with interest up to the date of the verdict.   The authorities are all one way on the subject, and it is unnecessary to discuss them.   The leading case in this State is that of Dilworth v. McKelvy, 30 Mo. 149.''   A number of other cases are also cited as holding to the same effect.

In this state of the law as announced in the decisions of our courts, it would have been error to have adjudged the whole value of the property to defendant or to have awarded him anything more than the amount of his interest in it, so that failure to assess the full value of the property replevied was not only no defect but a procedure entirely in line with the decisions of our court.   Moreover, it was to the advantage of the plaintiff, who placed the value of the property at $1000,

and his damages at $250, and is only charged with $735.13.

Finding no reversible error in the case, the judgment of the circuit court is affirmed.

*Allen* and *Becker, JJ.,* concur.